WILLIAMS *et al.*
*vs*
COLLINS *et al.*

When in such a case the signature is cut off or cancelled, (or never had been made,) and the testator immediately on the partial cancellation, endorses or writes his name, (or causes it to be done) on any part of the paper, with the intention of showing that what remained was his will, it is so, and effectual under the statute to pass lands and slaves.

---

CHANCERY.

*Case.* 19.

*October* 28.

# Williams *et al. vs* Collins *et al.*

ERROR TO THE RUSSELL CIRCUIT.

*Administrator de bonis non. Sheriff and his sureties. Trustees. Jurisdiction.*

CHIEF JUSTICE ROBERTSON delivered the Opinion of the Court.

ONE Sarah Collins, who was administratrix of William Collins, her deceased husband, having also died intestate, Samuel Collins was appointed the administrator of her own personal estate, and the administrator *de bonis non* of William Collins.

Samuel Collins having also died intestate, the proper County Court committed his estate to John Williams as sheriff.

The distributees of *William Collins* and of *Sarah Collins* afterwards instituted this suit in chancery against the said sheriff, and the sureties in his official bond, and the heirs of Samuel Collins, seeking a settlement and a decree for distribution.

The sureties having failed to answer the bill, an auditor appointed by the Court reported facts in a detailed and lucid order, and concluded therefrom that the distributees are entitled to about $1400, and that the estate of Samuel Collins, for which the sheriff and his sureties should be held responsible to those distributees, amounted to about $900: and thereupon, the Court approving the report, rendered a distributive decree in favor of the distributees severally, against the sheriff and his sureties jointly, for $899 90 cts, in the aggregate, and the like decree also against Samuel Collins' heirs for $521, to be made out of estate descended to them from their said ancestor.

The plaintiffs in error, seeking the reversal of that decree, insist, 1st. That the Circuit Court had no jurisdiction: 2nd. That the sheriff's sureties are not liable, and 3rd. That the decree is for too large a sum.

In revising the decree these objections only will be briefly considered:

1. The objection, as urged against the jurisdiction of a Court of Equity, is of a two-fold character, that is, that the 27th section of the general statute of 1797, under the authority of which the estate was committed to the sheriff, makes him, in such a case, a mere curative agent of the County Court, which has power to direct the application of the assets, and to distribute whatever surplus shall remain after paying all debts ordered to be paid—and therefore 1st. he is responsible to that tribunal only, and 2ndly. If liable to a suit in equity, no such remedy can be maintained unless, after being directed to make distribution, he had failed to do so; and no such action by the County Court or disobedience by the sheriff has been alleged in the bill.

WILLIAMS *et al.*
*vs*
COLLINS *et al.*

Sheriff charged with a special administration is a fiduciary, and subject like an ordinary administrator in a court of equity, to the suits of creditors, legatees & distributees. The jurisdiction of the county court is only concurrent.

Sheriff's sureties in his official bond are responsible for him as special adm'r. and for interest on assets used by sheriff as special adm'r. Promissory notes given to adm'r. as such, belong either to him & his adm'r. or to adm'r. *de bonis non* of first intestate, and so either may sue upon them according to circumstances.

But we are of the opinion that when charged with the special administration contemplated by the statute a Sheriff is, *pro hac vice,* a fiduciary in the same sense and for the same purposes as an ordinary administrator, so far as creditors, legatees, and distributees may be concerned, and that, as in other cases of trust, a Court of Equity has jurisdiction to compel a discovery and to enforce the performance of his fiducial duties, the more limited authority of the County Courts being, as far as it extends, concurrent only, and in no sense more exclusive than it is in other cases of administration.

2. As a sheriff, when charged with the administration of an estate under the statute, is not required to give any supplemental security, we must presume that, in selecting *him* in special cases, the Legislature looked to his official responsibility and the guarantees afforded by his official bond, and of course the faithful administration of the estate committed to his hands is one of the official duties contingently contemplated and embraced in the comprehensive condition of his official bond, executed long since the enactment of the statute of 1797, which was therefore, at the date of that obligation, a part of the law regulating his duties as sheriff, in the event of his being required, as he was, by an order of the County Court, to perform the prescribed functions of administering an intestate's estate. The sureties in that bond cannot, therefore, in our judgment, object that the administration of Samuel Collins' estate was not one of the official duties of the sheriff, their principal, the faithful performance of which, when devolved, they undertook to secure. They are, therefore, liable with him as far as he is officially responsible in this case.

3. The amount decreed in this case does not exceed the fund for distribution ascertained to have been in the hands of *Samuel Collins,* as administrator of *Sarah Collins,* and administrator *de bonis non* of *William Collins,* and legal interest thereon, with which he was justly charged, because there is proof of his having used the fund as his own.

Nor can there be any objection to the decree against the heirs, especially as it appears that estate of about the

value of the amount decreed against them had deceded to them from their father.

And, as the Sheriff. used as his own, the estate. in his hands, he also was properly charged with interest, which, together with the ascertained principal in his hands,. liable to the creditors of Samual Collins, amounted to as much as the sum decreed against him; for though a portion of the money collected by him may have been paid to him on notes which had been given to *Sarah Collins* as administratrix of *Wm. Collins*, yet as he would be personally liable for that amount as executor *de son tort*, even if it did not come to his hands legally as sheriff or administrator of Samuel Collins, he cannot object that he has been made liable for it in this suit.

But the sureties of the sheriff insist that such notes as those described, constitute no part of the estate of *Samuel Collins*, and that therefore, as they are responsible only for their principal's faithful administration of that estate, they have been erroneously charged in the decree with the amount of those notes.

This objection to the decree, though plausible, is not, in our judgment, maintainable.

The notes given to *Sarah Collins*, as administratrix, were *prima facie* assets of her intestate, which his administrator *de bonis non* might have lawfully collected by suit or otherwise, although she might have made them her own personal property by charging herself or by being charged in a settlement with the amount of them, or might have elected to sue on them in her personal right, in which event the *affix* (administratrix) would have been considered *descriptio personæ* merely. The rational doctrine recognized by a majority of modern adjudications seems to be this, that notes executed to an administrator, as *such*, may, if uncollected or undisposed of by him in his life time, become assets in the hands either of his own personal representative or of the administrator *de bonis non* of his intestate, the one or the other, (should there be collision between their claims,) being entitled to preference according to the proper result of the inquiry whether the first administrator had become beneficially entitled to the notes as a creditor, in consequence of ad-

*Margin note (right):*

WILLIAMS *et al.*
*vs*
COLLINS *et al.*

Sheriff charged as special adm'r of one who had been administrator of an administratrix, and as adm'r *de bonis non*, succeeded her as adm'r of another intestate, is chargeable with the amount received by him in notes given to the administratrix as such of the first intestate, and together with his sureties is liable to the distributees of two first intestates.

vances or otherwise, or by having charged himself or been charged with the amount of them, *Ord* vs *Fenwick,* 3 *East.* 103; *Cowell* vs *Watts,* 6 *Ib.* 405; *Catherwood* vs *Chabaud,* 1 *Barn. and Cress.* 150; *Partridge* vs *Conat,* 5 *Price,* 412. In *Catherwood* vs *Chabaud, supra,* Best, Justice, said "it is not necessary to decide that the ad- "ministrator of the administratrix, S. C. could not have "sued; it is sufficient to say that the administrator *de* "*bonis non* might sue; and this observation may serve to "reconcile the various cases which have been referred "to." To which Abbot, Chief Justice, subjoined the following concurrent and illustrative suggestions: "There "is much weight in the distinction which has been taken "by my brother Best. There may be cases where the "administrator of an administrator might and ought to "sue, viz: if the first administrator had made himself "debtor to the intestate's estate, for the amount of a bill, "in payment of a debt due to that estate."

This seems to be a just and rational doctrine, and therefore, as it is not inconsistent with any principle established by this Court, we are disposed to recognize it as sound and authoritative.

However, the application of this doctrine to this case does not, in our opinion, prove that even the sheriff's sureties are entitled to exoneration for the small amount of notes executed to Sarah Collins as administratrix, and which he collected in his fiducial character, and appropriated to his own use. *Samuel Collins* was entitled to the custody and collection of them either as administrator of *Sarah Collins* or as administrator *de bonis non* of *William Collins.*

And though the administrator of *Samuel Collins* would not, as such, have been necessarily entitled to them or responsible for them and could not have maintained an action at law upon them in his own name, yet he might have been equitably entitled to the custody and collection of them, if his intestate had acquired a beneficial right to them by being charged with or becoming responsible for the amount of them. And not only is it probable that this was the case, but after the death of Samuel Collins there was no administrator *de bonis non* of either

Sarah or William Collins until since the collection of those notes by the sheriff. As these notes were in the custody of Samuel Collins, at his death, and were not claimed by any person as the property of either Sarah or William Collins, the sheriff had a right, *prima facie*, to keep them and receive the amount of them as assets in his hands. And therefore, as he did so, and no other person ever claimed a right to the custody and collection, and Samuel Collins, as appears in this suit, had made himself liable for the amount of them and has been charged with it in this decree, it seems to us that, there being no proof or even intimation that he was not beneficially entitled to them, it would be too late now to say that the sheriff, as his administrator, had no authority to receive the amount of them, and that having done so he should not be responsible as *sheriff* and *special administrator*, under the statute, for failing to account for it as assets which properly came to his hands.

As therefore, the sheriff failed to account for the proceeds of those notes as well as for other funds in his hands, liable to distribution, his sureties as well as himself, are, in our judgment, justly responsible to the whole extent of his delinquency.

And therefore, perceiving no material error in the auditor's report, or in the decree thereon, to the prejudice of any of the plaintiffs in error, we must affirm the decree.

*Owsley* for appellants; *Harlan* for appellees.